OPINION
{¶ 1} Defendant-appellant, Bart Osborne, appeals from his judgment of conviction in the Warren County Court of Common Pleas for eight counts of drug trafficking. For the reasons outlined below, we affirm the decision of the trial court.
 {¶ 2} On July 9, 2001, appellant was indicted on eight counts of drug trafficking in violation of R.C. 2925.03(A)(1). The charges stemmed from eight sales of marijuana and cocaine in varying amounts to an undercover officer over a three-month period. Appellant, represented by attorney Jack Quinn, pled no contest to the charges on October 10, 2001. *Page 2 
While out on bail awaiting sentencing, appellant absconded to Florida where he lived under an alias for more than four years. During this time, appellant's attorney died. Appellant was eventually arrested in Florida and was brought before the Warren County Court of Common Pleas for his sentencing hearing on December 28, 2005. On the day set for his sentencing hearing, appellant, now represented by attorney Hal Arenstein, moved to withdraw his pleas of no contest. The motion asserted that appellant's decision to plead no contest was not knowing, voluntary, or intelligent due to the fact that his previous attorney was operating under a conflict of interest at the time he advised appellant to plead to the trafficking charges.
 {¶ 3} Appellant contended that at the time he was represented by Quinn, Quinn also represented appellant's biological father, Rodney Prater. Appellant had implicated Prater during the drug sales to the undercover officer and, using the information, officers had pursued a separate investigation and separate charges against Prater. Appellant and Prater were not co-defendants and were charged separately with separate offenses. Attached to his motion, appellant included the affidavit submitted in order to obtain the search warrant for Prater's residence, in which appellant is named as one source of information. Appellant also attached a transcript of appellant's interview with police, during which he had implicated Prater.
 {¶ 4} At the sentencing hearing on December 28, 2005, appellant's counsel presented an oral argument in support of his motion to withdraw the no contest pleas. Appellant's counsel reiterated that appellant had not knowingly, intelligently, and voluntarily entered into the no contest pleas due to Quinn's dual representation of appellant and Prater. Appellant referred to the information provided in the documents attached to his motion and argued that he had been denied the effective assistance of counsel due to Quinn's conflict of interest.
 {¶ 5} In response, the court stated: *Page 3 
 {¶ 6} "The Court indicated to Mr. Arenstein I would give him full opportunity to disclose on the record or argue on the record anything he wished in regard to that motion. I further indicated to Mr. Arenstein that it would be summarily overruled. Hindsight of four years while we're trying to find a fugitive, I'm not going to extend his time to file a motion to set aside a plea of no contest.
 {¶ 7} "I would rest assured, although I have not reviewed the transcript as Mr. Arenstein has, that Rule 11 was fully complied with at the time of the plea. Among the questions the Court would have posed to the Defendant were: Was he satisfied with the legal advice he was receiving from counsel? And the Court would not have proceeded if he had entered any type of dissatisfaction on the record.
 {¶ 8} "The Court explained to him the nature of his plea, what the plea meant, and the possible consequences of the plea. The motion is overruled.
 {¶ 9} "* * *
 {¶ 10} "And I'll only add I'm not going to voluntarily give the opportunity to a fugitive to defend a case on what may have become stale evidence because of his absence. So I don't know that that's the case or not, but four years will affect the memory of anybody involved in the case. And again, the motion is overruled."
 {¶ 11} The court then went on to sentence appellant to an aggregate term of seven years imprisonment. Appellant appeals, raising two assignments of error for our review:
 {¶ 12} Assignment of Error No. 1:
 {¶ 13} "A PRE-SENTENCE MOTION TO WITHDRAW A PLEA IS TO BE FREELY AND LIBERALLY ALLOWED, SUBJECT TO ABUSE OF DISCRETION REVIEW. THIS STANDARD REQUIRES THE TRIAL COURT TO CONDUCT A HEARING, CAREFULLY CONSIDERING THE MOTION AND ALL THE CIRCUMSTANCES SURROUNDING THE PLEA. DOES A TRIAL COURT SUMMARILY DENYING SUCH A MOTION ABUSE IT'S [sic] *Page 4 
DISCRETION?"
 {¶ 14} Issues Presented:
 {¶ 15} "I. The Trial Court Abused it's [sic] Discretion in Summarily Overruling Bart's Pre-Sentence Motion to Withdraw His Plea. The Court's Ruling Was Unjust and Unfair as Well as Unreasonable, Arbitrary, and Unconscionable."
 {¶ 16} "II. With The Knowledge Attorney Quinn Represented Both Bart and His Co-Defendant Father, The Trial Court Failed to Discharge It's [sic] Affirmative Duty to Determine if a Conflict of Interest Actually Exists. With This Failure, The Trial Court Violated Bart's Ohio And United States Constitutional Rights to Conflict Free Counsel."
 {¶ 17} "III. The Trial Court Abused it's [sic] Discretion by Failing Give [sic] Full and Fair Consideration to Bart's Motion by Failing to Rule on the Motion by Failing to File an Entry Containing the Court's Ruling."
 {¶ 18} Appellant contends that the trial court abused its discretion in denying his pre-sentence motion to withdraw his pleas of no contest. Appellant argues that the trial court failed to give full and fair consideration to his motion and failed to rule on the motion by failing to issue a journal entry containing a ruling. He further argues that the trial court was under an affirmative duty to determine the existence of an actual conflict. Initially we note that the court did, in fact, rule on appellant's motion, orally denying it on the record at the hearing. Crim.R. 32.1, governing the withdrawal of pleas, does not explicitly require the journalization of the disposition of a motion to withdraw a guilty plea. Therefore, the trial court's on-record denial is sufficient. We next consider whether the trial court abused its discretion in denying appellant's motion.
 {¶ 19} The decision to grant or deny a motion to withdraw a guilty or no contest plea is within the sound discretion of the trial court.State v. Xie (1992), 62 Ohio St.3d 521. While a defendant does not have an absolute right to withdraw a guilty plea prior to sentencing, the *Page 5 
Ohio Supreme Court has ruled that a trial court should "freely and liberally grant" a pre-sentence motion to withdraw a plea. Id. at 527. However, a mere change of heart regarding a decision to enter a plea, without some additional justification, is not a sufficient basis for the withdrawal of a guilty or no contest plea. State v. Deloach, Montgomery App. No. 21422, 2006-Ohio-6303. Upon a motion to withdraw a plea a court must conduct a hearing to determine whether there is a "reasonable and legitimate basis for the withdrawal of the plea." Xie at 527. Numerous Ohio courts have also found the potential for prejudice, caused to the state by a defendant's delay in filing a motion to withdraw a plea, to be a major factor for consideration in the court's decision. State v.Fish (1995), 104 Ohio App.3d 236, 240; see, also, State v. Price, Hamilton App. No. C-030262, 2003-Ohio-7109; State v.Grubb, Butler App. No. CA2003-01-014, 2003-Ohio-5002.
 {¶ 20} On review, a trial court's decision to deny a motion to withdraw a plea will not be reversed absent an abuse of discretion.Xie at 525. A reviewing court defers to the judgment of the trial court because "the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court." Id. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable. State v. Hancock, 108 Ohio St.3d 57,2006-Ohio-160, ¶ 130, quoting State v. Adams (1980), 62 Ohio St.2d 151,157. The term has further been defined as "a view or action `that no conscientious judge, acting intelligently, could honestly have taken.'" Id., quoting State ex rel. Wilms v. Blake (1945), 144 Ohio St. 619, 624.
 {¶ 21} In reviewing whether the trial court abused its discretion, this court considers the following factors: "(1) whether the accused was represented by highly competent counsel; (2) whether the accused was given a full Crim.R. 11 hearing before entering the plea; (3) whether a full hearing was held on the withdrawal motion; and (4) whether the trial *Page 6 
court gave full and fair consideration to the motion." State v.McNeil (2001), 146 Ohio App.3d 173, 176, citing State v. Peterseim
(1980), 68 Ohio App.2d 211, 214. In addition to these factors, other considerations include "(1) whether the motion was made within a reasonable time; (2) whether the motion set out specific reasons for the withdrawal; (3) whether the accused understood the nature of the charges and the possible penalties; and (4) whether the accused was perhaps not guilty or had a complete defense to the charges." Id., citingFish at 240; see, also, State v. Gabbard, Clermont App. No. CA2006-03-025, 2007-Ohio-461 (applying Peterseim and Fish factors).
 {¶ 22} Turning to these factors in the context of the case at bar, we find that a majority of the factors weigh in favor of affirming the decision of the trial court. As we will explain in more detail below, appellant was represented by competent counsel and was given a full Crim.R. 11 hearing in the acceptance of his pleas. Appellant's motion was clearly untimely, coming four years after his plea and only upon his re-arrest in Florida. Appellant does not allege that he did not understand the possible penalties or the consequences of his pleas and does not assert any type of defense or claim of innocence. Instead, the factors on which appellant focuses in this appeal relate to the hearing provided on his motion to withdraw and the sufficiency of the court's consideration of his argument. Admittedly, the hearing on appellant's motion was brief and the trial court failed to include findings regarding the merits of appellant's argument in its oral decision. However, because we find that appellant's motion was without merit, and because the remaining considerations weigh in favor of denial of his motion, the court's hearing, while brief, was sufficient under the circumstances.
 {¶ 23} We first turn to the merits of appellant's argument in support of his motion to withdraw his plea. In his motion, appellant claimed he had received ineffective assistance of counsel due to his attorney's conflict of interest. In order to succeed on this claim, appellant would have to satisfy the standard set forth in Strickland v. Washington
(1984), 466 U.S. 668, *Page 7 104 S.Ct. 2052. "When the alleged error underlying a motion to withdraw a guilty plea is the ineffective assistance of counsel, the movant must show (1) that his counsel's performance was deficient; and (2) that there is a reasonable probability that, but for counsel's errors, he would not have pled [no contest]." State v. Heath, Warren App. No. CA2006-03-036, 2006-Ohio-7045, ¶ 8, citing Xie at 524. The deficient performance alleged by appellant's motion asserted a conflict of interest. "A possible conflict of interest exists where the `interests of the defendants may diverge at some point so as to place the attorney under inconsistent duties.'" State v. Gillard, 78 Ohio St.3d 548,1997-Ohio-183 (emphasis in original). "[A]n actual conflict of interest exists if, `during the course of the representation, the defendants' interests do diverge with respect to a material factual or legal issue or to a course of action." Id. As in any argument claiming the ineffective assistance of counsel, the failure to make an adequate showing on either the "performance" or "prejudice" prongs will be fatal to an appellant's claim. Strickland at 697.
 {¶ 24} In his motion to the court, appellant argued that his counsel's performance was deficient due to a conflict of interest, and that he was "whip sawed" by his attorney's divided allegiance. Appellant claimed that he did not comprehend the importance of having a different attorney and merely took Mr. Quinn's advice and pled no contest. During his argument to the court, appellant's attorney suggested there may have been a potential for appellant to testify against his father and that Mr. Quinn's dual representation amounted to tainted advice in appellant's decision to plead no contest.
 {¶ 25} Looking to the first prong of the Strickland standard, it is apparent that appellant failed to establish a claim of ineffective assistance of counsel in his motion to withdraw his plea. The "dual representation" reflected in the facts of this case simply do not amount to a conflict of interest which would permit appellant to withdraw his guilty plea. In State v. Manross (1988), 40 Ohio St.3d 180, the Ohio Supreme Court found no such potential conflict *Page 8 
in a case in which an attorney represented both the appellant and his mother, charged separately with related drug trafficking offenses. The court explained that "[t]he term `conflict of interest' bespeaks a situation in which regard for one duty tends to lead to disregard of another." Id. at 182. The court went on to hold that "[t]here is no conflict where the two defenses did not result in one assigning blame to the other and where both defendants had a common interest in attacking the credibility of the prosecution witnesses." Id.
 {¶ 26} The potential for blame-shifting was again a factor in the court's later decision in State v. Dillon, 74 Ohio St.3d 166,1995-Ohio-169, in which the appellant's attorney had also represented a man named Mastice who had been charged with similar crimes. Finding that "Dillon's trial counsel did not represent competing interests, and that there was neither a possibility of a conflict of interest nor an actual conflict of interest," the court affirmed Dillon's convictions. Id. at 167. The court explained that although Mastice had implicated Dillon to the police as a suspect, and at one point had even been a potential witness against Dillon at trial, Dillon's defense had no basis for shifting blame to Mastice. Id. at 169. Thus, the court explained, Dillon's attorney "did not have a duty to advocate a position on behalf of Dillon that a duty to Mastice required him to dispute or vice versa." Id.
 {¶ 27} The same is true of the facts of the case before this court. Appellant was charged with eight drug sales to undercover officers. Prater, appellant's biological father, was charged with separate drug offenses stemming from a separate investigation and search warrant. Although appellant implicated Prater to undercover officers and in interviews with police, he offered no explanation as to how this would create any potential for "blame-shifting" which would cause Mr. Quinn's duties to one client to interfere with his duties to the other. Conversely, both appellant and Prater had a common interest in attacking the credibility of prosecution witnesses. Under the language the Ohio Supreme Court used in Dillon, this would not amount to even a potential conflict of interest. *Page 9 
 {¶ 28} The Strickland standard would require appellant to establish anactual conflict of interest during Quinn's representation in order to withdraw his guilty plea. However, the entirety of appellant's argument rests on the possibility that Prater's interests and his ownmight have conflicted and he fails to identify any ways in which this may have happened. While appellant suggests that there existed a possibility that he may be called to be a witness against Prater, he has provided no evidence to support such a presumption.
 {¶ 29} Similarly, while appellant asserts that Quinn's representation of Prater interfered with his representation of, and advice to, appellant, there is no evidence to support this allegation. Appellant does not assert that he is innocent of the charges nor that he has a defense that he would have presented had he been permitted to proceed to trial. He does not assert that he did not understand the charges or the consequences of his pleas. Although appellant contends that his plea was not knowing and intelligent due to the allegedly tainted advice, he fails to establish any connection between the asserted conflict of interest and any effect it had on his attorney's advice or his decision to plead. Therefore, appellant's sole argument for asserting that Quinn's representation was deficient and prejudicial fails, and he is unable to satisfy the Strickland standard.
 {¶ 30} Having determined that appellant's motion to withdraw his plea was wholly conclusory and without merit, we turn to appellant's argument that the trial court failed to afford him a sufficient hearing on his motion. While it is clear that the hearing on appellant's motion was abbreviated, the state argues that the hearing was sufficient under the circumstances. The Ohio Supreme Court's ruling in Xie states that, upon a pre-sentence motion to withdraw a plea, the trial court must hold a hearing to determine if the defendant has some reasonable and legitimate basis for withdrawal. See Xie, 62 Ohio St.3d 521. However, the court clarified that mandate by more recent language in State v. Francis,104 Ohio St.3d 490, 2004-Ohio-6894, in which the court explained that"Xie stands for the *Page 10 
proposition that, unless it is clear that denial of the motion is warranted, a trial court should hold a hearing." Francis at ¶ 51.[1]
The court explained that while there is no specific requirement to hold a hearing or issue findings of fact or conclusions of law, the failure to preserve the trial court's reasoning "severely hampers any consideration of whether an abuse of discretion occurred." The court went on to find that the trial court's failure to do so inFrancis required reversal and remand for further proceedings.[2]
However, the court was careful to stress that, "as a general rule, in the absence of specific requirements to the contrary, decisions as to whether to hold a hearing and as to whether to explain reasons for a ruling are matters entrusted to the sound discretion of the trial court. * * * We simply find that, in this case, the combination of a failure to hold a hearing and a failure to explain the reasoning are so significant that appellate review is impossible and that further proceedings by the trial court are necessary." Id. at ¶ 56.
 {¶ 31} Similarly, the First District Court of Appeals, applyingXie and the Peterseim and Fish factors, found that an abbreviated hearing was sufficient under the circumstances. State v. McNeil (2001),146 Ohio App.3d 173. In that case, the appellant McNeil filed a motion to withdraw his guilty plea two days before sentencing. On the day of sentencing, a brief hearing was held with the court considering comments from McNeil's attorney. The court reviewed McNeil's responses to the Crim.R. 11 colloquy and questioned McNeil about the voluntariness of his plea. McNeil admitted he had signed the plea agreement voluntarily although he felt he had a good case. The court overruled the motion and proceeded with sentencing. *Page 11 
 {¶ 32} On review, the First District noted that "[although an extensive hearing was not held on McNeil's motion to withdraw his plea, we cannot say that the trial court abused its discretion. The scope of the hearing to be held on a motion to withdraw a plea should reflect the substantive merit of the motion itself." Id. at 176. The court continued, explaining that "[b]old assertions without evidentiary support simply do not merit the type of scrutiny that substantiated allegations would merit." Id. Finding that McNeil's motion contained nothing more than claims of innocence without evidentiary support, the court held that the trial court had not abused its discretion in denying McNeil's motion.
 {¶ 33} In the case at bar, the court referred to only two factors in support of its denial of appellant's motion; prejudice and appellant's Crim.R. 11 plea hearing. The court emphasized that the state would be prejudiced by the four-year delay. The court explained, "I'm not going to voluntarily give the opportunity to a fugitive to defend a case on what may have become stale evidence because of his absence. So I don't know that that's the case or not, but four years will affect the memory of anybody involved in the case." Ohio law recognizes that, "[t]he more time that passes between the defendant's plea and the filing of the motion to withdraw it, the more probable it is that evidence will become stale and that witnesses will be unavailable." Francis at ¶ 40. It is clear that, included among the Peterseim and Fish factors, prejudice to the state is an "extremely important" factor for the court's consideration. Fish, 104 Ohio App.3d at 240.
 {¶ 34} While appellant is correct in asserting that the court presumed prejudice without evidence from the state, it is clear that Ohio case law supports a finding of prejudice in cases involving substantially less time. See State v. HaywooD(July 10, 1998), Hamilton App. Nos. C-970653, C-970654, C-970655 (considering prejudice of 20-month delay among other factors); State v. Grubb, Butler App. No. CA2003-01-014, 2003-Ohio-5002 (considering prejudice of two-month delay among other factors); State v. Bonner, Defiance App. Nos. 4- *Page 12 
04-05, 4-04-06, 4-04-07, 2004-Ohio-6043 (considering prejudice of two-year delay among other factors). Further, it is apparent from the record that appellant did not contest the court's presumption of prejudice at the hearing. The alleged error underlying appellant's desire to withdraw his plea would have been apparent at the time he entered the plea, yet appellant could offer no valid reason for the four-year delay. The only reason offered to account for appellant's four-year absence was that he feared retaliation from Prater. However, as the court pointed out at the hearing, Prater was imprisoned on separate charges throughout the four years appellant spent in Florida. Decisions regarding the credibility of these assertions are left to the discretion of the trial court.
 {¶ 35} The court also assumed, although without having reviewed the transcript, that Crim.R. 11 had been fully complied with in the acceptance of appellant's original plea. It is important to note that this fact was also not contested in the motion to withdraw appellant's plea, was not contested at the hearing, and is not contested in this appeal. This court has reviewed the transcript and it is clear that the trial court did, in fact, comply with the requirements of Crim.R. 11 in accepting appellant's pleas in 2001. At that time, the court engaged appellant in a full colloquy, discussing his rights and the consequences of his pleas. Additionally, the court did inquire as to appellant's satisfaction with his trial counsel, asking appellant, "[a]re you satisfied with the advice you've received from Mr. Quinn in this case?" To which appellant responded, "[y]es, sir," and asked no questions when given an opportunity to do so. At no time were any objections raised to Quinn's "dual representation," and at no time did appellant assert any dissatisfaction with Quinn's representation or advice.
 {¶ 36} These are the only considerations on the record in direct reference to appellant's motion. Later in the hearing, when making findings in support of its sentencing decision, the court noted that it was unpersuaded by appellant's explanation of the reasons he absconded to Florida. The court stated that, "the truth of the matter is that there was *Page 13 
never any intent for you to walk in this door until you got arrested. And if that hadn't happened, you'd still be in Florida playing golf." While made in reference to sentencing, these statements also indicate that the court was not convinced of appellant's credibility.
 {¶ 37} Based on our review of the facts of this case, we cannot say that the trial court abused its discretion in denying appellant's motion to withdraw his pleas of no contest, entered more than four years earlier. The court's presumption of prejudice to the state and potential for stale evidence, combined with the fact that appellant had a full Crim.R. 11 hearing are relevant considerations in denying a motion to withdraw a plea. "Where, as here, the defendant receives a full hearing at the time he enters his plea, understands the possible consequences of his plea, and makes no attempt to show that he has an affirmative defense or is not guilty of the crime, the trial court does not abuse its discretion in finding that the defendant does not have a reasonable and legitimate basis for withdrawing his plea." State v. Fairrow, Ross App. No. 05CA2856, 2006-Ohio-503. Appellant did have a full Crim.R. 11 hearing, he does not assert that he did not understand the consequences of his pleas, nor does he assert any kind of defense or claim of innocence.
 {¶ 38} Further, although the court's hearing on appellant's motion to withdraw was brief, it is clear that appellant's motion was without merit and failed to establish any conflict of interest which would have justified the withdrawal of his pleas. Aside from the conclusory allegations of conflict in his brief, appellant failed to bring forth any evidence establishing the alleged conflict of interest when given the opportunity to do so. He further failed to establish any connection between the alleged conflict and any affect it had on his voluntary decision to plead no contest to the trafficking charges. It is clear that a denial of his motion was warranted and the hearing was therefore sufficient under the circumstances.
 {¶ 39} Although it is the better practice to hold a hearing on such a motion, allowing for full review of a court's findings, we cannot say that the court abused its discretion in this *Page 14 
case. Despite appellant's assertion that the court did not consider the motion, based in part on the court's comment that it would "summarily overrule" the motion, it is clear that the court did permit appellant an opportunity to present the argument outlined in his motion and considered the prejudice and Crim.R. 11 factors in its decision. Where the Peterseim and Fish factors weigh in favor of affirming the trial court's finding, and the court's hearing was sufficient in light of the fact that appellant's motion was without merit, we find no abuse of discretion in the court's denial of appellant's motion.
 {¶ 40} Lastly, appellant argues, in the second issue raised under this assignment of error, that the court failed to discharge an affirmative duty to inquire into the potential conflict of interest. Appellant argues that, once his conflict of interest argument was raised, the court had an absolute duty to inquire further to ensure that no actual conflict existed. Because we find that the facts of this case raised neither an actual nor a potential conflict of interest, we disagree.
 {¶ 41} Although more commonly associated with co-defendants in joint trials, Ohio law recognizes that where a trial court knows or reasonably should know of an attorney's possible conflict of interest in the representation of a person charged with a crime, the trial court has an affirmative duty to inquire whether a conflict of interest actually exists. State v. Gillard (1992), 64 Ohio St.3d 304; see, also, State v.Seals, Clark App. No. 04CA0063, 2005-Ohio-4837. "If the trial court has failed to make an inquiry where it had a duty to do so, the case must be remanded to the trial court for a determination of whether an actual conflict of interest existed." State v. Pelphrey, 149 Ohio App.3d 578,2002-Ohio-5491, ¶ 13. However, an attorney is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop. Seals at ¶ 14, citing State v.Manross (1988), 40 Ohio St.3d 180. Therefore, it is reasonable for the trial court to assume that multiple representation entails no conflict. Id. *Page 15 
 {¶ 42} As described above, we find no potential conflict of interest represented in the circumstances of this case. Appellant and Prater were charged separately with separate drug offenses and they were not co-defendants. Additionally, neither appellant's nor Prater's defenses possessed a potential for "blame-shifting." Pursuant to the court's language in State v. Dillon, 74 Ohio St.3d 166, 169, 1995-Ohio-169, these facts do not represent a potential conflict of interest or create an affirmative duty to inquire. See, also, State v. Stewart, Washington App. No. 02CA29, 2003-Ohio-4850 (finding appellant's conclusory allegations of conflict, raised in motion for new trial, insufficient to trigger a court's duty to inquire). Appellant's assertion of conflict was wholly conclusory and fails to establish any facts supporting a potential for conflict requiring an inquiry by the court. We therefore find that the trial court did not err in failing to inquire into the alleged conflict.
 {¶ 43} Because appellant's motion to withdraw his plea was without merit, because the court noted relevant factors in denying appellant's motion, and because the court was not required to inquire into the alleged conflict of interest, appellant's first assignment of error is overruled.
 {¶ 44} Assignment of Error No. 2:
 {¶ 45} "THE OHIO AND UNITED STATES CONSTITUTIONS GUARANTEE EFFECTIVE AND MEANINGFUL REPRESENTATION TO CRIMINAL DEFENDANTS. BART'S TRIAL COUNSEL MADE DID [sic] NOT INTRODUCE EVIDENCE IN SUPPORT OF BART'S MOTION TO WITHDRAW HIS PLEA. FAILING TO MAKE AN ADEQUATE RECORD DEPRIVED BART OF EFFECTIVE AND MEANINGFUL REPRESENTATION."
 {¶ 46} Appellant's second assignment of error challenges the effectiveness of the representation he received in advocating the motion to withdraw his pleas. Appellant contends that Arenstein, in bringing the motion to withdraw the no contest pleas entered under Quinn, failed to create a sufficient record and failed to establish certain facts necessary *Page 16 
to satisfy the Strickland standard.
 {¶ 47} As noted above, in order to be successful in his claim of ineffective assistance of counsel, appellant must establish that his attorney's representation in bringing the motion to withdraw his pleas was both deficient as well as prejudicial. See Strickland v.Washington, 466 U.S. 668. Failure to establish either prong of theStrickland standard is fatal to an appellant's claim. Id. at 697. Because appellant has failed to establish how he was prejudiced by his attorney's performance, we find this argument to be without merit.
 {¶ 48} Appellant refers to arguably disparaging remarks made by Quinn in reference to appellant during Quinn's representation of Prater. Appellant argues that his attorney's failure to include such evidence in the motion to withdraw constitutes ineffective assistance of counsel. He further argues that his attorney failed to assert certain facts in the motion, including the fact that Quinn represented Prater while representing appellant and that both cases were heard by the same trial judge.
 {¶ 49} However, because this additional evidence fails to aid appellant's case in establishing Quinn's deficient representation, the failure to include it did not result in any prejudice to appellant. As we have described above, appellant's motion fails to establish any potential conflict of interest justifying the withdrawal of his pleas. Even if the court had been permitted to consider the additional evidence to which appellant refers, appellant still fails to establish that Quinn's duties to Prater had in any way interfered with his duties or advice to appellant or that his alleged "divided allegiance" in any way affected appellant's decision to plead no contest.
 {¶ 50} Because appellant fails to establish how his attorney's alleged failure to include the additional evidence prejudiced the outcome of the motion hearing, he fails to establish his claim of ineffective assistance of counsel. Accordingly, appellant's second assignment of error is overruled. *Page 17 
 {¶ 51} Judgment affirmed.
POWELL, P.J., and YOUNG, J., concur.
[1] While Francis dealt with a motion to withdraw a plea under R.C.2943.031, rather than Crim.R. 32.1, the court noted that the same abuse of discretion standard of review applied and considered State v.Xie and many of the same factors in reaching its decision.
[2] The trial court had denied the appellant's motion without a hearing and failed to provide any explanation for the denial in its journal entry. *Page 1